U.S. against Alvarez-Carvajal. Go ahead. Thank you. Thank you, your honors. Good morning. May it please the court. Again, I apologize for the inconvenience. I don't know what happened there. My name is William Margulis and I represent the appellant Fernando Alvarez-Carvajal. Mr. which was actually a downward variance from the sentencing range of 360 months to life. It is our position in the two issues that we raised on appeal is that the district court inappropriately applied two sentencing enhancements in this case, resulting in a higher sentence than she otherwise would have given had she correctly determined the guideline range. The first enhancement, a two-level enhancement that the district court imposed was on the basis on pursuant to section 3C point 3C 1.1 of the sentencing guidelines under the obstruction of justice enhancement. The district court adopted the factual findings from the pre-sentence report that was filed in this case. In that pre-sentence investigation report, the probation officer based the enhancement on one statement that the defendant testified to, and that was that he had obtained money from another co-conspirator for the lawful which the probation officer based the sentencing enhancement on. And I'll get back to that in a second. The other issue with respect to that is that the court never made a specific finding that the obstruction of justice encompassed all the perjury factual findings. The district court never made a finding that Mr. Alvarez Carvajal's statement was a lie as to a material fact in the case, and she never made a finding that he had specifically intended to obstruct justice with that statement. Mr. Margulis, on the the comments that the judge made with regard to the sentence that she would give, she obviously got a sentence of 240 months, ultimately was pronounced. Even if we were to reverse on the obstruction, the guideline range there would drop then, as I see it, to 292 to 365. The sentence, obviously, that was received is substantially below that, and we do have Judge Rosenstegel making these comments about having given the same sentence even if the guidelines had been miscalculated. Can you speak to that scenario? Certainly, Your Honor. First of all, in every sentencing, the court, their first duty is to correctly determine what the guideline calculation is, the appropriate offense level, and the sentencing range. In this particular case, the judge did vary downward from that range, and I know she made that statement on the record. The judge also indicated, in making that downward variance, that there were several factors that she took into consideration, one being the defendant's age, his lack of criminal history. I believe she referenced his more minimal involvement in the conspiracy, and also the fact that he would almost surely be deported after serving any sentence since he was not a citizen. So, you know, I think that, you know, this court should not guess or predict or, you know, try to determine what the District Court judge would do regarding the downward variance had she correctly calculated the guideline range. But Mr. Margulis, just to follow up on that, I thought she did tell us. That is, we have time and time again encourage district judges to do exactly what Judge Rosenstein did in this case. That is, the guidelines have a lot of tricky issues. Sometimes they're borderline, sometimes they're cliffs in the calculations. Criminal history calculations can involve maddening arbitrary, maddeningly arbitrary questions, particularly because of the categorical method that's applied. And that's why we keep saying, tell us, in essence, why you care how this particular guideline issue comes out. And if you don't, if you don't care, tell us so, and we'll respect it. Why shouldn't we read her comments that way in this case? Well, because I still have from the premise that she incorrectly calculated the guidelines. That's the premise in every one of these cases. Correct. That I'm talking about. And what you would, what you seem to be doing is inviting us to remand to Judge Rosenstein for her to say, no, I really meant it. I am asking the court to remand for resentencing with the correct guideline calculation. I mean, I think if, I think, generally speaking, if a district court judge in every sentencing proceeding, you know, made that statement that, you know, she would have, that the judge would have given the same sentence, you know, under different circumstances or under a different calculation of the guidelines, then I think that would, we would never be appealing any of these issues. I mean, I, you know, I think then every sentence would stand, you know, no matter what the circumstances were, even if the guidelines were incorrectly calculated. If that's a thoughtful result of a thoughtful application of 3553A, what would be wrong with that? Well, that's a good question. I mean, I still think the guidelines have to be calculated correctly. I don't think this court should, should guess or try to predict what the judge would do in a different circumstance. Thank you. Since I only have a little bit left before my rebuttal time, I did want to just briefly address the, the other enhancement that I raised in my brief that the judge made an incorrect finding on the drug, the enhancement for the premises that my client owned being used as a drug house or in furtherance of the drug conspiracy. The only basis for that finding was that drugs were stored at that residence. I think if you look at all the cases that were cited, not only in our brief, but in the government's brief as well, I don't think the, there's a factual basis for the two level enhancement that was imposed in that. Did the district judge ever actually address the difference between primary or principal uses of the property and the incidental or collateral uses that are discussed in the guidelines? I'm sorry, judge. I missed the very first part of the question. Did the judge address the difference between principal and primary use on the one hand and incidental or collateral uses on the other? No, I don't believe she did, your honor. I, I, uh, I argued that my client had paid the mortgage on the house for 15 years. It was a family home that he resided in. There was very little evidence that any drug activity ever took place at the home. There was no evidence of manufacturing or distribution. I don't think the judge ever addressed anything other than the fact that drugs were stored at that location on occasion. Thank you. Thank you. I will reserve the remaining time I have for rebuttal. All right. Thank you very much for the government. We'll hear from Ms. Raja Gopal. Thank you, your honor. May it please the court. My name is Kyra Leah Raja Gopal and I'm appearing on behalf of the United States. First, I want to address your question posed to opposing counsel regarding the obstruction of justice enhancement. As your honor noted, the district court very thoughtfully made statements at sentencing when it, when it gave a below guideline sentence. Now, in this case, the district court made both factually and legally sufficient findings. But even if this court finds that the district court did not, the error was not harmless. There are two points. Your position is that it was harmless? It was, it was harm, it was not harmless error. It was harmless error. Excuse me. Yes. There are two points on harmless error that I'd like to make. The error was harmless first because the record was clear. Remand for resentencing is not warranted where the record is clear that the defendant willfully lied about material matter while testifying. Here, defendant claims all of his financial interactions with Teddy were legitimate. But his subsequent claim, that's all I had with Teddy was false. This is material because it goes to the nature and extent of his relationship with Teddy, which really goes to the heart of the conspiracy. And it's not willful because it's not the result of mistake or faulty memory. Essentially, he told a lie that nobody could believe. Now, the second point on harmless error that I want to make is that the court stated it would have imposed the same sentence. Now, the district court heard these exact same arguments at sentencing. It rejected them at that time, and then it immediately proceeded to sentencing where it thoughtfully evaluated the 3553A factors, imposed a below guideline sentence, and made the statement. Now, if I miscalculated the guideline, I would impose the same sentence. 360 months is greater than necessary. 10 years isn't sufficient. But 20 years is for all those reasons. This shows it was not a cursory or off-the-cuff statement, but one thoughtfully made, as Your Honor noted, after weighing the evidence. Now, I want to go back and discuss briefly how the court made both a factually and legally sufficient finding in this case. Appellant argues that his statements were literally true, so it can't be applied. But this mischaracterizes the district court's findings. It is important to note that the district court adapted the PSR findings in this case. The PSR on pages 9 and 10 gave the enhancement because it stated that the defendant testified falsely at trial, indicating that the monies he received from Aquaboa was for the legitimate purpose of putting money on Jesus Alvarez's jail account. Now, the appellant, then the defendant in this case, lodged his objections, but the PSR writer did an addendum in this case, in which he noted the false statements again and added that it suggests the money was not for payment of illicit drugs or in furtherance of the conspiracy. The defendant's involvement in this conspiracy consisted of ICE, of delivering ICE and delivering drug proceeds that he obtained from Aquaboa. And in fact, the court checked the box for saying that it adapted the PSR. This is material. I'll tell you, I have no doubt that the evidence in this case could support an obstruction enhancement. But given the Supreme Court's and our quite specific requirements about findings that are necessary to impose based on false trial testimony. I frankly am skeptical that that just the adoption of the PSR is enough. Your Honor, while it is preferable that the district court address each element in a separate and clear finding, like they said and done again, the court can make a finding that encompasses all of the factual predicates of perjury. That is material matters designed to substantially affect the outcome of the case. In this case, the district court's findings were factually and legally sufficient. The appellant's testimony was not a result of confusion or mistake or faulty memory. He willfully lied with his statements. That's all I had with Teddy. And this court can also additionally look at the record in the case. In this case, numerous witnesses testified, and those witnesses directly contradicted the testimony of appellant. There was a testimony of Mr. Margulis is not arguing that the finding could not be supported. He's arguing that the findings were not made. OK, well, let me ask you if I could to address the the premises enhancement. Yes, sir. Well, frankly, I have doubts that that the evidence could even support that. And I'm certainly concerned that the district judge did not seem to have engaged on the the line that the guidelines draw between primary or principal uses and incidental or collateral uses. Your Honor, the district court made a clear finding in the record as to its findings of enhancement. The court specifically found that it had that the appellant had a possessory interest in the home. The district court specifically stated that he owned the home and paid mortgage. The district court found that he stored pound quantities of ice in the home. And in looking at the colloquy between the court and the district court, the government discussed at the sign of set at the time of sentencing. And the district court even cited the the case Sanchez, which looked at storage and controlled access as relevant factors. Again, the district court adopted the PSR and noted that it's not necessary that manufacturing or distributing were sole purposes. This court's authority, Your Honor, is nobody says it. Nobody says it has to be sold. But the guidelines are quite clear in saying you need to think about the difference between incidental and primary uses. Indeed, Your Honor, this court should focus on factors. This court has often delivered many cases in which they talk about factors such as frequency, quantity, customer interactions, tools of the trade and access. That was present in this case. The several witnesses at trial testified that this was the home that drugs were kept. In fact, the absence of evidence that it was kept anywhere else is also key. Testimony was evident at trial that the defendant smalls sold small amounts of drugs at his home. He met Chuito, which was a co-defendant, which was a member of the conspiracy, and they met to exchange money. So in this case, to primarily rely on the fact that defendant used it as a family home, as the as appellant argues, would essentially protect every residence from ever being applied this enhancement. Furthermore, Your Honor, this that's there's a pretty good argument. The enhancement was intended basically to focus on the owners of crack houses, stash. I think that goes just a little bit too far, and this is what those factors are there for. This court has to look at both the frequency, but also the significance in tandem. This essentially the home, Mr. Alvarez's home was the only home that drugs were stored at in this case. And so I don't think the case goes as far as to say that it has to be for manufacturing or as far as for for a crack house, as Your Honor alluded to. But even so, if this court finds that the district court did not make a sufficient finding, it goes back to that harmless error analysis and the harmless error analysis. The district court, again, as as I previously mentioned, heard these arguments and still decided to to give the defendant a below guideline sentence and stated that, you know, after hearing these arguments, she would would have given the same sentence, even if she miscalculated the guidelines. So, unless Your Honor have no further questions, I would stand in my brief and ask that you affirm the district courts. Thank you. Thank you, counsel. Mr. Margulis, any rebuttal? Just very briefly, Your Honor, it's to your point. I did just want to point out that on the and I mentioned this on the bottom of page twenty five of my brief, the appellant's brief. The judge did accurately, I believe, state what she needs to find to support the enhancement, the obstruction of justice enhancement. But then she never actually made that finding. She just kind of recited, you know, what the what the guideline says on that. And then she applied it without taking the next step and actually making the specific findings. And then if you look at the her statement of reasons that were filed in the case, the district court judge makes a statement that one of the enhancements was imposed because the defendant exercised his constitutional right to take the stand and testify in his own defense, which I think the case law is clear and the application notes are clear that that is not in and of itself a reason to apply that enhancement. And then I would reemphasize that that the judge never did address or consider the other all the other factors with respect to the drug house enhancement. And it's my position, I believe I stated in the brief as well, that it was always been my reading of that enhancement, that it's mainly applies to drug dens and drug houses and meth labs and that sort of thing. And I just don't think the evidence in this case is sufficient. And I thank the court for their time. And I see my time's running out. So I would ask the court to remand this matter back to the district court for resentencing. Thank you. All right. Our thanks to both counsel for your helpful arguments and the case will be taken under advisement.